1
2
3
4

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

FELIX ALBERTO CASTRO-DAVIS,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 13-1662 (JAF)

(Crim. No. 07-186-01)

5
6

**OPINION AND ORDER**

7      Petitioner Félix Alberto Castro-Davis ("Castro-Davis") comes before the court

8    with a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence we

9    imposed in Criminal No. 07-186-01. (Docket No. 1.) For the reasons set forth below, we

10    order a hearing on the issue of whether or not Castro-Davis was advised of all plea

11    options, but we deny the remainder of the motion.

12                                   **I.**

13                             **Background**

14      On April 25, 2007, the grand jury indicted Castro-Davis for several offenses

15    relating to a carjacking that resulted in death. (Crim. No. 07-186-01, Docket No. 13.) On

16    March 10, 2008, the jury found Castro-Davis guilty on all three counts. (Crim. No. 07-

17    186-01, Docket No. 244.) We sentenced Castro-Davis to five years imprisonment for

18    conspiracy; to the remainder of his natural life for the carjacking itself, to be served

19    concurrently; and to seven years for the use of a firearm during the crime, to be served

20    consecutively to the other sentences. Through this point, his lawyer was Epifanio

21    Morales-Cruz (Crim. No. 07-186-01, Docket No. 275.) Mr. Morales-Cruz is an

1    experienced attorney, having served as an Assistant U.S. Attorney and as an Assistant

2    Federal Public Defender for many years.

3           Castro-Davis timely appealed.  U.S. v. Castro-Davis, 612 F.3d 53 (1st Cir. 2010).

4    On July 16, 2010, the First Circuit affirmed Castro-Davis' convictions, but remanded for

5    resentencing.  Id.; (Crim. No. 07-186-01, Docket No. 305).  On November 30, 2010, we

6    resentenced Castro-Davis to the same terms as in the original judgment.  He was

7    represented at resentencing by Rafael Anglada-López (Crim. No. 07-186-01, Docket

8    No. 342.)  Castro-Davis timely appealed, and his resentencing was affirmed on May 15,

9    2012. (Crim. No. 07-186-01, Docket Nos. 363, 379.)  The  First  Circuit  issued  its

10   mandate on July 2, 2012.  On August 28, 2013, Castro-Davis filed the instant motion to

11   vacate, set aside or correct his sentence under 28 U.S.C. § 2255.  (Docket No. 1.)  The

12   government opposed.  (Docket No. 3.)  Castro-Davis replied.  (Docket No. 6.)

13                                              **II.**

14                                      **Legal Standard**

15          A federal district court has jurisdiction to entertain a § 2255 petition when the

16   petitioner is in custody under the sentence of a federal court.  See 28 U.S.C. § 2255.  To

17   file a timely motion, a petitioner has one year from the date his judgment becomes final.

18   28 U.S.C. § 2255(f).  His judgment became final on the last day that he could have filed a

19   petition for a writ of certiorari, which was ninety days after the entry of the Court of

20   Appeals' judgment.  Sup. Ct. R. 13(1); Clay v. United States, 537 U.S. 522 (2003).

21   Therefore, Castro-Davis' petition is timely and we have jurisdiction.

22          A federal prisoner may challenge his sentence on the ground that, inter alia, it

23   "was imposed in violation of the Constitution or laws of the United States."  Id.  A

24   petitioner cannot be granted relief on a claim that has not been raised at trial or direct

1   appeal, unless he can demonstrate both cause and actual prejudice for his procedural

2   default.  See United States v. Frady, 456 U.S. 152, 167 (1982).  Indeed, "[p]ostconviction

3   relief on collateral review is an extraordinary remedy, available only on a sufficient

4   showing of fundamental unfairness."  Singleton v. United States, 26 F.3d 233, 236 (1st

5   Cir. 1994).  Claims of ineffective assistance of counsel, however, are exceptions to this

6   rule.  See Massaro v. United States, 538 U.S. 500, 123 (2003) (holding that failure to

7   raise ineffective assistance of counsel claim on direct appeal does not bar subsequent

8   § 2255 review.)

9                                              **III.**

10                                        **Discussion**

11       Because Castro-Davis appears pro se, we construe his pleadings more favorably

12   than we would those drafted by an attorney.  See Erickson v. Pardus, 551 U.S. 89, 94

13   (2007).  Nevertheless, Castro-Davis' pro-se status does not excuse him from complying

14   with procedural and substantive law.  See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir.

15   2008).

16       Castro-Davis alleges several grounds for habeas relief.  He alleges that trial

17   counsel was ineffective for failing to make proper objections; that his eighty-four-month

18   sentence must be reduced to sixty months in light of Alleyne v. United States, ___ U.S.

19   ___ (2013), 133 S. Ct. 2151 (2013); and that trial counsel provided inaccurate advice

20   during plea discussions.  (Docket No. 1.)

21   **A.    Failure to make proper objections**

22       To prove a claim of ineffective assistance of counsel, Castro-Davis must show that

23   both: (1) the attorney's conduct "fell below an objective standard of reasonableness;" and

24   (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the

1  result of the proceeding would have been different." <u>Strickland v. Wash.</u>, 466 U.S. 688,

2  688-94 (1984).

3        First, a trial witness testified that Castro-Davis told him "they" had done it

4  "policeman style," and said that he understood that phrase to mean that they stopped the

5  victim's car with a weapon and claimed to be policemen.  Trial counsel did not object.

6  Castro-Davis alleges that the witness' testimony as to the meaning of the phrase was

7  improper because it was a "conclusion."  (Docket No. 1 at 5.) This issue was already

8  raised and considered on appeal.  The First Circuit rejected the contention that the use of

9  the phrase "policeman style" was too vague to support a jury finding that the taking of the

10  car was done "by force and violence by intimidation."  See <u>Castro-Davis</u>, 612 F.3d at 62.

11  The First Circuit has held that when an issue has been disposed of on direct appeal, it will

12  not be reviewed again through a § 2255 motion.  <u>United States v. Doyon</u>, 16 Fed.Appx. 6,

13  9) 1st Cir. 2001); <u>Singleton v. United States</u>, 26 F.3d 233, 240 (1st Cir. 1994) (citing

14  <u>Dirring v. United States</u>, 370 F.2d 862, 863 (1st Cir. 1967)).  The Supreme Court has held

15  that if a claim "was raised and rejected on direct review, the habeas court will not

16  readjudicate it absent countervailing equitable considerations."  <u>Withrow v. Williams</u>,

17  507 U.S. 680, 721 (1993).  Given the First Circuit's decision in Castro-Davis' appeal that

18  the phrase "policeman style" could support a jury finding that the taking of the car was

19  done by force and violence, this issue does not warrant further consideration.

20        Secondly, at trial, we asked a witness in the presence of the jury whether she was

21  afraid of being in court.  Castro-Davis alleges that his counsel's failure to move for a

22  mistrial constituted ineffectiveness.  (Docket No. 1 at 5.)  Petitioner is precluded from

23  raising this issue in a Section 2255 motion because he failed to raise the issue on appeal.

24  <u>Bucci v. United States</u>, 662 F.3d 18, 27 (1st Cir. 2011).  However, even if it were not

1  precluded, it fails on the merits.  Petitioner takes the question we asked the witness out of

2  context.  After allowing the prosecution to treat her as hostile, the witness was still unable

3  to provide answers to the government's questions.  We were concerned that the witness

4  had been tampered with:

5                       THE COURT:  Any cross?
6
7                       MR. MORALES-CRUZ: Yes, Your Honor.
8
9                       THE COURT: Please.  Aside from law enforcement agents,
10                      has somebody else contacted you regarding your testimony in
11                      this case?
12
13                      THE WITNESS:  Law enforcement?
14
15                      THE COURT:  Aside from FBI agents or police officers, has
16                      somebody knocked on your door to ask you questions about
17                      this case?
18
19                      THE WITNESS:  I was called and – I was called to – to – I
20                      don't remember exactly what it was.  I remember I called
21                      Agent Means and asked him if I should talk to the defense.
22                      His name is Alvin something.  I don't remember his last
23                      name.  And I asked Agent Means if that was necessary, and
24                      he told me it wasn't necessary.  That it was up to me.  So I
25                      chose not to.
26
27                      THE COURT:  Okay.
28
29                      THE WITNESS:  And then this week I got – he went to my
30                      house, knocked on my door, and gave me a Subpoena to
31                      come here.  Same guy.
32
33                      THE COURT:  All right.  Are you afraid of being here today?
34
35                      THE WITNESS:  I'm really uncomfortable with it.
36
37                      THE COURT:  Why?
38
39                      THE WITNESS: I'd rather not be.
40

1    THE COURT:  What bothers you being here?

3    THE WITNESS:  That I don't really know what happened.

5    (Crim. No. 07-186-01, Docket No. 290 at 197-98).  Here, our interaction with the witness

6    was brief and her response in no way indicated that her fear of the courtroom was related

7    to any fear she might have had of Castro-Davis.  Nothing about her response could

8    reasonably have prejudiced the jury against him.  Castro-Davis' claim fails.

9    Castro-Davis also alleges that his counsel was ineffective for failing to object to

10   several statements the government made during closing argument.  First, the prosecutor

11   told the jury: "And you hold them accountable for what they did, all three of them.  You

12   hold them accountable."  (Docket No. 1 at 5.)  Second, the government said: "Because

13   you heard Jose Figueroa tell you how Felix Alberto described to him how they had done

14   it police style, pointing a gun at him, slapping handcuffs on him, throw him in the

15   backseat of his own car, and drove him to Jose Figueroa-Cartagena's house," which

16   Castro-Davis claims is a misstatement.  (Docket No. 1 at 6.)  Third, the prosecutor said:

17   "So Felix Gabriel did not say that they couldn't control Don Perez.  That's not what he

18   said.  Think back to Jose Figueroa's testimony before you.  What Felix Gabriel told Jose

19   Figueroa was, we couldn't strangle him, that's what he said."  (Docket No. 1 at 6.)

20   Castro-Davis already raised this issue on appeal.  Addressing the issue, the First

21   Circuit held:

22   [T]he court's general closing instructions did properly
23   counsel the jury regarding what constituted evidence and the
24   fact that they were the sole judges of credibility.  The
25   instructions specifically reminded jurors they were the "sole
26   judges of the credibility of the witnesses" and that "arguments
27   and statements of counsel are not evidence."  Given the
28   evidence presented at trial from multiple witnesses, any
29   potentially harmful effect from the prosecutor's closing was

safeguarded by the district court's final jury instructions.  See United States v. Mejía-Lozano, 829 F.2d 268, 274 (1st Cir. 1987)(finding that the district judge's standard instruction was sufficient to overcome any prejudice).  [Quotations and citation in original.]

Castro-Davis, 612 F.3d at 68.  Again, because Castro-Davis previously raised this issue on direct appeal, he is precluded from asserting it anew in a collateral proceeding. Singleton, 26 F.3d at 240.

**B.     Alleyne v. United States**

Castro-Davis alleges that his sentence must be reduced from eighty-four months to sixty months in light of Alleyne v. United States, ___ U.S. ___ (2013), 133 S. Ct. 2151 (2013).  He argues that this is because our 84-month mandatory minimum sentence was not authorized by the jury's verdict.  (Docket No. 1 at 7.)  Castro-Davis' Alleyne argument is misplaced.  In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that a fact must be submitted to a jury and found beyond a reasonable doubt if it increases a defendant's statutory mandatory maximum sentence.  Alleyne extends this principle to facts that increase a defendant's statutory mandatory minimum sentence. The Supreme Court held in United States v. Booker, 543 U.S. 220 (2005), that Apprendi was not retroactively applicable.  While the Supreme Court has not decided whether Alleyne applies retroactively to cases on collateral review, the United States Court of Appeals for the Seventh Circuit has suggested, without deciding, that because "Alleyne is an extension of Apprendi … [t]his implies that the Court will not declare Alleyne to be retroactive."  Simpson v. United States, 721 F.3d 875 (7th Cir. 2013).  At this time, several district courts have held that Alleyne does not apply retroactively to cases on collateral review.  See Lassalle-Velazquez v. United States, 2013 WL 4459044 (D.P.R. Aug. 16, 2013); United States v. Stanley, 2013 WL 3752126, at *7 (N.D.Okla. July 16,

1    2013); United States v. Eziolisa, 2013 WL 3812087, at *2 (S.D.Ohio July 22, 2013);

2    Affolter v. United States, 2013 WL 3884176, at *2 (E.D.Mo. July 26, 2013); United

3    States v. Reyes, 2013 WL 4042508, at *19 (E.D.Pa. Aug. 8, 2013).  Since neither the

4    Supreme Court nor the First Circuit has held Alleyne to be retroactively applicable, we

5    decline to do so here.

6    **C.    Advice during plea discussions**

7            Castro-Davis alleges that his trial counsel provided inaccurate advice during plea

8    discussions.  He claims that he told counsel he wanted a plea option that did not require

9    cooperation with the government, but that trial counsel said that was not available.

10   Castro-Davis alleges that counsel "failed to advise the petitioner that he could have

11   entered an 'open guilty plea.'"  (Docket No. 1 at 9.)  He points to a case from another

12   circuit, United States v. Booth, 432 F.3d 542 (3rd Cir. 2005).  According to Booth, an

13   "open guilty plea" is a guilty plea made by the defendant without the benefit of a plea

14   agreement.  Id at n.1.  We refer to it as a "straight plea."

15           We are skeptical of this claim, and Castro-Davis' assertion that he would have

16   accepted a guilty plea is less credible given the record evidence that he steadfastly

17   maintained his innocence post-conviction.  (Docket No. 2 at 13.)  However, due to an

18   abundance of caution, we will hold an evidentiary hearing with Castro-Davis, as well as

19   his two lead lawyers, Epifanio Morales-Cruz and Rafael Anglada-López. The evidentiary

20   hearing will only investigate whether or not counsel advised Castro-Davis that he had the

21   option to plead guilty without entering a cooperation agreement with the government.

22   All other claims are summarily dismissed.

1                                           **IV.**

2                                      **<u>Conclusion</u>**

3        We will hold an evidentiary hearing to determine whether Castro-Davis was

4    advised of his plea options.  We **ORDER** that Castro-Davis, Morales-Cruz, and Anglada-

5    López be available at the hearing to be held on **April 23, 2014, at 9:30 A.M.**

6        For the foregoing reasons, we hereby **DENY** the remainder of Castro-Davis'

7    § 2255 motion (Docket No. 1).  Pursuant to Rule 4(b) of the Rules Governing § 2255

8    Proceedings, summary dismissal of these claims is in order because it plainly appears

9    from the record that Castro-Davis is not entitled to § 2255 relief from this court on those

10   claims.  Since this is not a final disposition until we address the issues described in Part C

11   above during a hearing, we defer entry of judgment and a decision on the issuance of a

12   certificate of appealability.

13       **IT IS SO ORDERED.**

14       San Juan, Puerto Rico, this 18th day of March, 2014.

15                                              <u>S/José Antonio Fusté</u>
16                                              JOSE ANTONIO FUSTE
17                                              U. S. DISTRICT JUDGE