UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

FÉLIX ALBERTO CASTRO-DAVIS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 13-1662 (JAF)

(Crim. No. 07-186-01)

## SUPPLEMENTAL OPINION TO DOCKET NO. 7

On August 28, 2013, Félix Alberto Castro-Davis ("Castro-Davis") came before the court with a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence we imposed in Criminal No. 07-186-01. (Docket No. 1.) The government opposed this motion. (Docket No. 3.) On March 18, 2014, we issued an opinion and order denying in part the petition. We dismissed all claims other than one regarding advice during plea discussions, which we needed to explore further. (Docket No. 7.) On April 24, 2014, we held an evidentiary hearing to address what advice was given during plea discussions. Castro-Davis was represented by counsel, and both Castro-Davis and the lawyer for his criminal case, Epifanio Morales-Cruz ("Morales"), served as witnesses. After the hearing, it is clear to us that this petition must be dismissed.

### I.

### Evidentiary Hearing

In his petition, Castro-Davis alleged that his trial counsel provided inaccurate advice during plea discussions. He claimed that he told counsel he wanted a plea option that did not require cooperation with the government, such as a straight plea, but that Morales said that was not available. (Docket No. 1.)

During the April 12, 2014, evidentiary hearing, the facts of the case were clearly established. Castro-Davis told the court that he wanted to plead guilty in order to have a potential reduction of sentence. Had he originally pled, the sentencing guidelines would have changed slightly. Instead of a life term of imprisonment, the sentencing guidelines would have recommended a range of thirty-five years imprisonment up to life, within the judge's discretion. Although Castro-Davis said he wanted to accept responsibility for the carjacking and weapon charge and conspiracy, he still maintained innocence in that he did not have anything to do with the murder.

In his testimony, Morales said that he followed his standard procedure in this case, which was to use the first one or two client meetings to explain the full process. He says that he discussed the possible capital phase, and the three ways to dispose of the case – a negotiated plea with the government; a straight plea; or a trial. Morales said that he visited Castro-Davis once every two weeks, totaling twenty-four or twenty-five visits.

Morales also brought several exhibits to the stand. The first exhibit was a letter from the government offering Castro-Davis thirty-seven years for a guilty plea. The letter does not mention cooperation. Castro-Davis signed the top of the letter, witnessing that he had seen it. According to Morales, Castro-Davis became upset when shown the letter, and said that he wanted a sentence in the teens. According to Morales, about six or seven months into the case, Castro-Davis told him that he had heard about a different carjacking case where the defendant did a straight plea and received twelve to fourteen years. Morales generally explained the sentencing guidelines, and said that because Castro-Davis' carjacking resulted in a murder, it would be impossible to get a sentence so low after a straight guilty plea.

Morales also testified about a March 2 meeting close to the trial date. According to Morales, Castro-Davis said that he wanted to negotiate with the government and was willing to negotiate a deal that would have him serve fifteen years in prison. For his second exhibit, Morales showed the emails that he sent and received that night with the Assistant United States Attorney (AUSA) asking for a negotiated plea deal on behalf of his client. The next day, Morales spoke on the phone with the AUSA. He testified that he asked if there was a possibility of less than twenty years and the AUSA rejected it. He testified that he then asked if it was possible to get less than twenty-five years, and again the AUSA denied that request. She offered a recommendation of thirty-five years in exchange for a guilty plea, and of thirty-two years if all the defendants pled guilty. Morales asked to have this in writing and, at 11:10 A.M., the AUSA sent an email outlining this offer. Morales testified that he then spoke with his client in person, and Castro-Davis said the he would not take a plea deal for more than fifteen years.

At the evidentiary hearing, Morales was asked about Castro-Davis' mental capacity. There had been a medical evaluation for a potential death-penalty certification in the potential capital phase showing that Castro-Davis had some form of diminished capacity. Morales said that he had been surprised by that report because Castro-Davis had always understood and asked good questions of him during their meetings. Morales further stated that he went over the offer letter with Castro-Davis line by line, and neither Morales nor Castro-Davis ever mentioned cooperation with the government while reviewing the letter. At the hearing, we questioned Petitioner and he was able to tackle all questions and give unequivocal responses. We credit attorney Morales' testimony and place in question the credibility of the Petitioner.

**II.**

**Analysis**

The only remaining issue is whether Morales provided ineffective assistance of counsel regarding plea discussions. (Docket No. 7.) To prove a claim of ineffective assistance of counsel, Castro-Davis must show that both: (1) the attorney's conduct "fell below an objective standard of reasonableness;" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Wash., 466 U.S. 668, 688-94 (1984). This same test applies in the context of guilty pleas. Lafler v. Cooper, 132 S.Ct. 1376 (2012); Missouri v. Frye, 132 S.Ct. 1399 (2012); Hill v. Lockhart, 474 U.S. 52 (1985). While the performance prong is the same as in a trial context, for the prejudice prong, Castro-Davis must show that,

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 1232 S.Ct. 1376 at 1385; see also Frye 132 S. Ct. at 1409-10.

Castro-Davis has not shown that Morales' conduct fell below an objective standard of reasonableness. Although that alone is enough to defeat the claim, Castro-Davis has also failed to show that his sentence under the offer's terms would have been less severe than the sentence that was in fact imposed, because life imprisonment would still have been within the guidelines range, even after a plea. Further, we note that even in the evidentiary hearing, Castro-Davis refused to admit to any involvement in the

murder. Such an admission of guilt would have been essential to a straight plea. For these reasons, we dismiss the remaining claim in his petition.

### III.

### Certificate of Appealability

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever issuing a denial of § 2255 relief we must concurrently determine whether to issue a certificate of appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). While Castro-Davis has not yet requested a COA, we see no way in which a reasonable jurist could find our assessment of his constitutional claims debatable or wrong. Castro-Davis may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

### V.

### Conclusion

For the foregoing reasons, we hereby **DENY** Castro-Davis' § 2255 motion (Docket No. 1). It is evident that Petitioner's claims have no credible basis on the developed record. Judgment will enter dismissing this case in its entirety.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 25th day of April, 2014.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE